**RIETMANN LAW, P.C.**
1270 Chemeketa St. NE
Salem, Oregon 97301
Telephone: (503) 551-2740

Nathan R. Rietmann   #053630
nathan@rietmannlaw.com

Attorneys for:    Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **NO on 878**, *an Oregon referendum petition committee*; **JONATHAN POLONSKY**, *an individual*; **BRENT CHADWICK**, *an individual*, **JORDAN SCHWARTZ**, *an individual*; **JASON WILLIAMS**, *an individual,* **PLAID PANTRIES, INC**., *an Oregon corporation*; **HENRY'S VAPE, INC**., *an Oregon Corporation*; **SERENITY VAPORS, LLC**, *an Oregon limited liability corporation,* | Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> 43 U.S.C. 1983 |
| Plaintiffs, | |
| v. | |
| WASHINGTON COUNTY, *an Oregon home rule county,* PATRICK ALLEN, *in his official capacity as Director of the Oregon Health Authority* | |
| Defendant. | |

**INTRODUCTION**

1.     Plaintiffs "No on 878" committee, Jonathan Polonsky, Brent Chadwick, Jordan Schwartz, Jason Williams, Plaid Pantries, Inc. ("Plaid"), Henry's Vape, Inc. ("Henry's), and Serenity Vapors, LLC ("Serenity") are bringing this complaint against Defendants Washington

County and Patrick Allen in his official capacity as Director of the Oregon Health Authority pursuant to 43 U.S.C. §1983.

2. Plaintiffs are seeking declaratory and injunctive to vindicate rights guaranteed by the First and Fourteenth amendments to the United States Constitution and to prevent further irreparable harm to their constitutionally protected rights and property interests.

3. The action arises because Defendants Washington County and Patrick Allen, while acting under color of state law, are asserting that certain county legislation is law when, in fact, it is not.

4. The county legislation at issue is known as Ordinance 878 and seeks to ban the sale and distribution of flavored nicotine products in Washington County, Oregon, along with other restrictions.

5. Although the Washington County Board of Commissioners adopted Ordinance 878, Plaintiff Polonsky, Chadwick and 10,233 other voters exercised their referendum rights and referred Ordinance 878 to voters for approval or rejection in accordance with Oregon Constitution Article IV §4 and Article VI §10.

6. Washington County acknowledged the validity of the referendum petition and purportedly placed Ordinance 878 on the May 17, 2022 election ballot as Measure 34-314.

7. The purported referendum election on Ordinance 878 took place on May 17, 2022 and a majority rejected Measure 34-314 by voting "no."

8. Although a majority voted "no," Defendants Washington County and Patrick Allen, are now asserting Ordinance 878 is law and threatening to enforce it through business sting operations and other means starting July 1, 2022. Defendants are doing this under color of state law even though:

(a) Oregon Constitution Article IV §1(4)(d) provides that a "referendum measure becomes effective 30 days *after the day on which it is enacted or approved by a majority of the votes cast thereon*."

(b) Oregon Supreme Court precedent unambiguously holds that "[w]hen a referendum is invoked, the act of the legislature then becomes merely a measure to be

voted on by the people, and, if the people vote in the affirmative, the measure becomes an act; if they vote in the negative, the measure fails." *Portland Pendleton Motor Transp. Co. v. Heltzel*, 197 Or 644, 647, 255 P2d 124, 125 (1953).

(c)     Oregon Constitution Article IV §1(4)(b) states that "referendum measures shall be submitted to the people *as provided in this section and by law not inconsistent therewith."*

(d)     Washington County's Home Rule Charter states that "[i]f a proper referral petition containing the appropriate number of valid signatures is filed…*the ordinance shall become inoperative and the effective date shall be suspended.*" WCC §50.

(e)     Washington County's Home Rule Charter states that "[a]n ordinance referred by action of the voters *shall become effective when approved by a majority of the voters.*" WCC §50.

(f)     *Not once* in the one-hundred and twenty (120) years since the people of Oregon reserved the referendum power to themselves in the Oregon Constitution has a referendum measure become law by a majority voting "no."

9.     By asserting that Ordinance 878 became law through a "no" vote and threatening to enforce it against Plaintiffs and nearly three-hundred other similarly situated businesses, Defendants are: (a) unduly burdening Plaintiffs' referendum rights under the Oregon Constitution and/or depriving them of their fundamental right to vote, in violation of the free speech, association, and petition guarantees of the First Amendment of the United States Constitution, (b) denying Plaintiffs equal protection of the law in the exercise of their referendum and voting rights in violation of the Fourteenth Amendment, and (c) depriving Plaintiffs and all others similarly situated of their constitutionally protected liberty and property interests without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

10.     Plaintiffs' constitutionally protected rights and property interests are being, and will continue to be, irreparably harmed before judgment in this matter may be obtained unless Defendants are restrained from enforcing Ordinance 878 during the pendency of this action. The

harm is irreparable because deprivations of constitutional rights cannot be remediated by money damages, and here, the harms to constitutionally protected property interests include loss of good will, market share, and business reputation, in addition to complete destruction of businesses – none of which may be adequately remedied through money damages. *Melendres v. Arpaio*, 695 F3d 990, 1002 (9th Cir 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury."); *Elrod v. Burns*, 427 US 347, 373, 96 S Ct 2673, 2690, 49 L Ed 2d 547 (1976). ("It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Am. Passage Media Corp. v. Cass Comms., Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) ("The threat of being driven out of business is sufficient to establish irreparable harm."); *Kraus v. Harder*, No. 03–1198–MO, 2004 WL 716576, at *7 (D. Or. Mar. 31, 2004) ("Courts have been willing to issue a preliminary injunction to protect against situations involving primarily economic harm in only limited circumstances. For example, when the very existence of a party's business is at stake, courts have been willing to entertain granting a preliminary injunction.").

11. To prevent further irreparable harm to Plaintiffs' constitutionally protected rights and property interests during the pendency of this action, Plaintiffs are seeking a temporary restraining order and preliminary injunction enjoining enforcement of Ordinance 878, in addition to permanent declaratory and injunctive relief.

## JURISDICTION AND VENUE

12. Jurisdiction arises under 28 U.S.C. §§ 1331, 2201, and 2202.

13. The acts alleged herein occurred in the District of Oregon and venue is therefore appropriate pursuant to 28 U.S.C. 1391.

## PARTIES

14. Plaintiff *No on 878* is a petition committee duly organized and existing under ORS 260.118 and other laws of the State of Oregon, which was organized to enable circulation and

qualification of a referendum petition to refer Washington County Ordinance 878 to voters for approval or rejection

15.     Plaintiff Jonathan Polonsky is an individual Washington County voter, the President and Chief Executive Officer of Plaid Panties Inc., as well as stockholder in the company. Plaintiff is also a Director of *No on 878* and chief petitioner on the referendum petition to submit Washington County Ordinance 878 to voters for approval or rejection.

16.     Plaintiff Brent Chadwick is an individual Washington County voter and the Chief Financial Officer of Plaid Pantries, Inc., as well as a stockholder in the company. Plaintiff is also the treasurer of *No on 878* and a petition signer on the referendum petition to submit Washington County Ordinance 878 to voters for approval or rejection.

17.     Plaintiff Jordan Schwartz is an individual Washington County voter and one of the two owners of Serenity Vapors, LLC. Plaintiff testified in opposition to Ordinance 878 when it was being considered by the Washington County Board of Commissioners and spent time and money circulating circulars to encourage opposition to the proposed ordinance. Plaintiff signed the referendum petition to refer Ordinance 878 to voters for approval or rejection.

18.     Plaintiff Jason Williams is an individual Washington County voter, the Executive Director of Taxpayers Association of Oregon, and a person who sought to exercise his First Amendment rights to freedom of association, speech, and petition by signing the referendum petition on Ordinance 878, submitting an argument in opposition to Ordinance 878 in the County's Voters' Pamphlet urging a "no" vote, and casting a ballot at the May 17, 2022 election. Because Plaintiff Williams opposed Ordinance 878 and his statement urged *opposition* to the measure, he submitted his statement on the form for statement "in opposition to" Measure 34-314. Subsequently, Mr. Williams found out that Washington County was conducting an election on a measure proposing to repeal Ordinance 878, not Ordinance 878 itself. Thus, his statement appeared in the section of the voters' pamphlet dedicated to statements urging opposition to the measure to repeal Ordinance 878.

19.     Plaintiff Plaid Pantries, Inc. ("Plaid") is an Oregon domestic business corporation duly organized and existing under the laws of the State of Oregon. Plaid Pantries, Inc. owns one-

hundred and four (104) "Plaid Pantry" convenience stores in the State of Oregon, with twenty-four (24) of those stores located in Washington County, Oregon. Plaid Pantries owns tobacco retail licenses to sell tobacco products and inhalant delivery systems at each of these locations. A substantial portion of Plaid's profits are derived from the sale of flavored tobacco and synthetic nicotine products, as well as sales of ancillary products (beverages, snacks) to these same consumers. Plaid financially contributed to the *No on 878* referendum petition committee.

20. Plaintiff Henry's Vape, Inc. ("Henry's) is an Oregon domestic business corporation duly organized and existing under the laws of the State of Oregon. Henry's owns two (2) retail tobacco licenses for stores in the State of Oregon, both of which are located in Washington County. Approximately 80% of Henry's revenue is derived from the sale of flavored tobacco and synthetic nicotine products. Henry's has entered into long term real estate leases for its two business locations.

21. Plaintiff Serenity Vapors, LLC ("Serenity") is an Oregon limited liability company duly organized and existing under the laws of the State of Oregon. Serenity owns three retail tobacco licenses, all of which are for stores in Washington County, which Plaintiff rents. Serenity sells flavored synthetic nicotine products and the devices used to consume these products. It does not sell products containing the tobacco plant and its business is predominately directed at former tobacco users who are seeking to quit the use of tobacco products. Ordinance 878 would ban approximately 80% of the products Plaintiff sells and destroy approximately 90% of its sales. If Ordinance 878 is enforced, Plaintiff will go out of business as vaping products that imitate the taste of tobacco do not sell well, and it would be completely antithetical to Plaintiff's business model and its owners' sensibilities to start selling tobacco products in a desperate attempt remain in business. Serenity currently has eight (8) employees, not including Mr. Schwartz and his business partner and was looking to hire two to four additional employees before Washington County began pursuing Ordinance 878.

22. Defendant Washington County is a duly constituted and chartered home rule county existing under the Oregon Constitution and the laws of the State of Oregon. At all times material, Defendant has acted under color of state law with respect to the matters alleged herein.

Defendant is a "person" within the meaning of 43 U.S.C. 1983. *See e.g., Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978 ("[M]unicipalities and other local government units…[are] among those persons to whom §1983 applies."); *King v. Cty. of Los Angeles*, 885 F.3d 548, 558 (9th Cir. 2018) (quoting *Streit v. County of Los Angeles*, 236 F.3d 552, 559 (9th Cir. 2001)("A county is subject to Section 1983 liability 'if its polices, whether set by the government's lawmakers or by those whose edits or acts…may fairly be said to represent official policy, caused the particular constitutional violation at issue.'")

23. Defendant Patrick Allen is an individual Oregonian serving as director of the Oregon Health Authority, which has the policy as well as a custom, practice, and usage of enforcing county laws regulating tobacco/synthetic nicotine products and inhalant delivery systems on behalf of Washington County and other counties. In his official capacity as director of the Oregon Health Authority, Defendant Allen's actions under color of state law are highly determinative of whether Oregon Health Authority will enforce Ordinance 878 against Plaintiffs as has been threatened. Defendant Allen is a "person" for purposes of 42 U.S.C. §1983 because he is being sued in his official capacity for prospective injunctive relief, not damages. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013); *Flint*, 488 F.3d at 825; *Doe*, 131 F.3d at 839; *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1371 (9th Cir. 1992). *See also Paeste v. Gov't of Guam*, 798 F.3d 1228, 1235–40 (9th Cir. 2015) (discussing distinction between suits seeking damages and suits seeking prospective relief); *Thornton v. Brown*, 757 F.3d 834, 839 (9th Cir. 2013).

## ALLEGATIONS

24. The Oregon Constitution reserves the referendum power to the people of Oregon, which is power to stay the enforcement of a law enacted by a state or local governing body through the circulation and filing of a referendum petition containing the constitutionally required number of voter signatures unless or until the specific legislation being referred, or part thereof, is submitted to voters at an election for approval or rejection and "*approved by a majority of the votes cast thereon.*" Or. Const. Article IV §1(4)(d); *See e.g., M.S. v. Brown,* 902 F3d 1076, 1084 (9th Cir 2018) ("In fact, the measure enacted by the Legislature, which is

referred to the people, is not a law. *It will never become a law unless a majority of voters voting upon the referred bill vote in favor of the bill.*")

25. The exercise of the referendum power reserved to the people in the Oregon Constitution is protected by the First Amendment applied to the States through the Fourteenth Amendment, as well as the due process and equal protection guarantees of the Fourteenth Amendment itself. *See e.g., Lemons v. Bradbury*, 538 F3d 1098, 1102 (9th Cir 2008) ("regulations on Oregon's referendum process implicate plaintiffs' fundamental right to vote"); *Stone v. City of Prescott,* 173 F3d 1172, 1175 (9th Cir 1999) ("State may not impermissibly burden the exercise of the right to petition the governing by initiative or referendum. This holds true even if the burden is imposed by the State Constitution itself.")

26. Plaintiffs' *No on* Ordinance 878, Polonsky, Chadwick, and Williams have referendum and voting rights guaranteed by the Oregon Constitution and state and local laws consistent therewith. The First and Fourteenth amendments to the United States Constitution guarantee the exercise of Plaintiff's referendum and voting rights under the Oregon Constitution. *See, e.g., Lemons v. Bradbury*, 538 F3d 1098, 1102 (9th Cir 2008).

27. Plaintiffs Plaid, Henry's, Serenity, Polonsky, and Chadwick own property interests protected by the Fourteenth Amendment to the United States Constitution, which they may not be deprived of without due process and equal protection of the law. These property interests include, but are not limited to: (a) Plaintiffs' retail tobacco licenses issued by the State of Oregon granting them the right to sell flavored tobacco products and inhalant delivery systems to customers at retail locations in Washington County, (b) Plaintiffs' inventories of flavored tobacco/nicotine products and/or inhalant delivery systems, which Plaintiffs have invested substantial amounts of money in and acquired for the sole purpose of offering for sale at their retail locations in Washington County in accordance with their tobacco retail licenses, (c) Plaintiffs' real estate leases for the premises from which they conduct their businesses in Washington County, (d) the good will and reputation of these businesses, and (f) the businesses themselves.

28. On or about November 2, 2021, the Washington County Board of Commissioners adopted Ordinance 878 to prohibit the sale of flavored tobacco products and inhalant delivery systems in Washington County.

29. On November 17, 2021, Plaintiff Polonsky attempted to exercise his referendum by submitting a prospective referendum petition with the Washington County Elections Office. Plaintiff Polonsky's referendum petition included the full text of Ordinance 878, which is the specific legislation he sought to refer to voters for approval or rejection through his referendum petition.

30. On November 19, 2021, Plaintiff Polonsky and Chadwick attempted to exercise their speech, association, and petition rights guaranteed by the First Amendment by forming "No on 878" petition committee and designating Plaintiff Chadwick as the treasurer. The name selected for the committee was intended to communicate Plaintiff Polonsky's political viewpoint that voters should vote "no" on the referendum measure he was seeking to refer to voters (i.e. Ordinance 878).

31. Thereafter, Plaintiff Polonsky and the *No on 878* petition committee attempted to exercise their First Amendment association, speech, and petition rights by raising $106,000 and spending all but a few thousand dollars of the sum raised to collect the signatures necessary to submit Ordinance 878 to voters and communicate their political viewpoint that voters' should vote "no" on Ordinance 878.

32. On January 27, 2022, Defendant Washington County informed Plaintiff Polonsky that his referendum petition contained 10,235 valid signatures, which was more than the number of signatures needed to place Ordinance 878 on the ballot. Plaintiffs Polonsky and Chadwick are among the 10,235 registered voters who attempted to exercise their First Amendment speech, association, and petitioning rights by signing the referendum petition to refer Ordinance 878 to voters for approval or rejection.

33. On March 11, 2022, Defendant Washington County published "Notice of Measure Election" on the County website and assigned Ordinance 878 ballot measure number 34-314. The Notice of Measure Election indicated the election would take place May 17, 2022.

34. The election on Measure 34-314 was conducted on May 17, 2022.

35. On June 13, 2022, Washington County certified the election results. The certified results show 36.9% of all registered voters cast ballots on Measure 34-314 and that 24.03% of those voting voted "yes" and 75.96% voted "no."

36. Although a majority voted to reject Measure 34-314 by voting "no," Defendant Washington County is asserting under color of state law that Ordinance 878 was approved and enacted by voters at the May 17, 2022 election and took effect June 13, 2022.

37. While acting under color of state law, Defendants Washington County and Allen are now threatening to cause Ordinance 878 to be enforced against Plaintiffs through inspections, sting operations, and other means beginning July 1, 2022.

38. Defendants contend Ordinance 878 was enacted and approved through a majority "no" vote because the ballot title Defendant Washington County's Office of Legal Counsel prepared for the measure included a question asking whether Ordinance 878 should be repealed, and a majority thereafter voted "no" at the election.

39. Defendant Washington County's duty to draft a ballot title is ministerial and statutorily confined to describing the "actual major effect" and "chief purpose" of the specific legislation referred to voters through the referendum process, as well as "summarizing the measure and its major effect." *See,* ORS 250.035. Oregon law requires the question in the ballot to "plainly phrase the chief purpose of the measure so that an affirmative response to the question corresponds to *an affirmative vote on the measure.*" ORs 250.035(1)(b).

40. Defendant's authority to draft a ballot title for specific legislation referred to voters through the referendum process does not carry with it any legal authority for Defendant to: (a) change the meaning, significance, effect, or legal consequence of casting a "yes" or "no" vote on the specific legislation being voted upon, or (b) change the measure being voted upon to a measure other than the specific legislation referred to voters for approval or rejection by citizens exercising their referendum rights under the Oregon Constitution. Yet in asserting that Ordinance 878 is law and will be enforced beginning July 1, 2022, Defendant Washington

County is necessarily contending its drafting of the ballot title had one or the other of these two effects.

41. Defendants' actions under color of state law to either change the meaning of a "yes" or "no" vote on Ordinance 878, or change the measure being voted upon from Ordinance 878 to a measure proposing to repeal Ordinance 878, unduly burdens Plaintiffs' exercise of their referendum rights and/or deprives them of their fundamental right to vote.

42. Defendants' actions under color of state law to enforce Ordinance 878 deprive Plaintiffs of their rights to equal protection of the laws and due process in the exercise of their referendum rights and right to vote in violation of the First and Fourteenth amendments to the United States Constitution. Among other reasons:

(a) Defendants had no authority to change the meaning of a "yes" or "no" vote on Ordinance 878.

(b) Defendants had no authority to supplant the specific legislation Plaintiffs submitted to voters through the referendum measure (i.e. Ordinance 878) with a separate measure proposing to enact a repeal of Ordinance 878.

(c) As a result of Defendants' actions under color of state law, Plaintiffs are being treated differently than any other chief petitioner, petition signer, petition committee, or voter in any other referendum election taking place over the past 120-years. *Not once* in the one-hundred and twenty (120) year constitutional history of Oregon's referendum has a referendum measure become law through a majority "no" vote. *Not once* in the one-hundred and twenty (120) year constitutional history of Oregon's referendum has the staff of a state or local governing body supplanted the specific legislation lawfully referred to voters through the citizen referendum process with an alternative measure, written by staff, thereby causing a measure to appear on the ballot that was never lawfully referred either by citizen referendum or by referral of a legislative body through a majority vote.

(d) The burdens on Plaintiffs' referendum and voting rights are severe. Defendants' actions under color of state law have either: (i) wholly defeated Plaintiffs'

referendum rights and right to vote by causing a measure other than the legislation they specifically referred to voters to appear on the ballot, or (ii) allowed Defendant Washington County's staff to unilaterally change the meaning and legal effect of a "yes" and "no" vote for this one particular measure at this one particular election without the prior enactment of any law granting Defendant's staff the lawful authority to change the meaning of a "yes" or "no" vote,  and (iii) shifted the heavier burden of obtaining a "yes" vote from the proponents of Ordinance 878, where the burden is allocated under the law, to the opponents of Ordinance 878.

(e) The severe burdens imposed on the exercise of Plaintiff's referendum and voting rights, as well as property interests, do not serve any important or compelling interest of Washington county. To the contrary, the actions of Defendant Washington County under color of state law to unilaterally change the well-established law governing the exercise of referendum and voting rights for one particular election on one particular ballot measure without the prior enactment of laws granting them the lawful authority to do so serves to undermine important governmental interests, such as maintaining the integrity, regularity, and uniformity of Oregon's election processes and voter confidence therein. *See e.g., Purcell v. Gonzalez*, 549 US 1, 4, 127 S Ct 5, 7, 166 L Ed 2d 1 (2006). ("Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy."); *Crawford v. Marion Cnty. Election Bd.*, 553 US 181, 204, 128 S Ct 1610, 1624, 170 L Ed 2d 574 (2008) ("The application of the statute…is amply justified by the valid interest in protecting the 'integrity and reliability of the electoral process.'")

43.     Defendant Washington County is asserting that violation of Ordinance 878 is a civil infraction with a presumptive fine of $435 and a maximum fine per violation of $2,000 for individuals and $4,000 for corporations. According to Defendant Washington County, each day in violation is a separate violation.

44.     If not restrained, Defendants will enforce Ordinance 878 as law starting July 1, 2022. Enforcement necessarily entails accusing Plaintiffs of violating Ordinance 878 should

they continue selling tobacco/nicotine products on or after July 1, 2022, as well as the imposition of daily financial penalties. Defendants accusing Plaintiffs' of violating Ordinance 878 and potentially even lending publicity to those violations as a means of deterring other businesses from continuing to sell flavored tobacco and/or synthetic nicotine products pursuant to their retail tobacco licenses – even though Ordinance 878 is not the law – will irreparably harms Plaintiffs' good will and business reputations by stigmatizing them as lawbreakers, bad actors, or illegal business operators/owners. The financial harm and reputational damages that necessarily follow from enforcement is coercive and will irreparably harm Plaintiffs because the only way to avoid the risk of financial penalties and reputational harm is for Plaintiffs to stop selling products they are legally entitled to sell and incur the harms this entails.

45. If Defendants are not restrained and are permitted to enforce Ordinance 878 beginning July 1, 2022 on Plaintiffs:

(a) Approximately 80% of the products Serenity currently sells will be banned. Although Serenity will legally be able to continue offering the remaining 20% of its products for sale (e.g., stand-alone inhalant devices without vapors containing flavored nicotine), most of these products are of little use to customers without the products Serenity can no longer sell. Therefore, Serenity reasonably expects many existing customers who currently purchase these products from Serenity to instead purchase them from businesses in neighboring counties where they can also purchase the flavored nicotine products that go with the inhalant devices. Thus, Serenity expects to lose approximately 90% of its total business sales, or more, to competitors outside of Washington County. Consequently, Serenity's owners will close their business if Ordinance 878 is enforced against them and this will result in its eight employees losing their jobs (not including the two business owners and one of the owner's spouses who is involved in the business). If enforcement of Ordinance 878 occurs and Serenity is forced to go out of business, it will need to break its leases with its landlords and necessarily incur time, expense, legal fees, and potentially legal action as a result, which it will not be able to recoup through money damages. In the event it is determined that Ordinance

878 was not lawfully approved and enacted by voters after Serenity goes out of business, a subsequent award of money damages will not put Serenity back in business, or enable it to reentered its leases, restore its good will and business reputation, or enable it to re-employ the long-term employees whose employment will be terminated when Serenity goes out of business.

(b) To eliminate any risk of financial penalties it cannot afford to pay or contest, Henry's has stopped selling the flavored tobacco/nicotine products that generate 70% to 80% of its revenue on June 13, 2022. Sales of Henry's remaining products, predominately devices used to consume flavored nicotine and related accessories are plummeting. Customers who ordinarily would buy vaporizers and other vaping accessories from Henry's are now buying these products in Clackamas County, right across the freeway from Henry's, where they are now purchasing their flavored nicotine products. Although Henry's is attempting to remain in business because it a party to long-term leases and its owners' sole source of income, there is a high probability that Henry's will not be able to generate sufficient revenue to cover its overhead costs and will soon be forced to go out of business if enforcement of Ordinance 878 is not enjoined.

(c) Plaid anticipates enforcement of Ordinance 878 will result in lost profits on sales of products containing flavored tobacco/nicotine in the amount of approximately $31,000 per week, or $1.5 million annually, at its twenty-four Washington County stores. Plaid further anticipates that Ordinance 878 will cause it to lose approximately $70,000 per week in ancillary sales of beverages, snacks, and other items, or a total of $3.64 million annually. The other restrictions of Ordinance 878 prohibiting advertising promotions are anticipated to result in further losses of sales on non-flavored tobacco/nicotine products. Though impossible to predictively quantify, Plaid fully expects that enforcement of Ordinance 878 will cause it to lose overall market share in the convenience store industry to competitors in nearby neighboring counties that are not subject to the restrictions Ordinance 878 imposes.

**CLAIM FOR RELIEF**

46. Plaintiff re-alleges paragraphs 1-45 herein.

47. The First Amendment to the United States Constitution guarantees the right to freedom of speech, association, and petition the government and protects the exercise of referendum rights arising under state law and the right to vote.

48. The Fourteenth Amendment guarantees "equal protection of the laws" and prohibits states and persons acting under color of state law from depriving "any person of life, liberty, or property, without due process of law."

49. Defendants are unduly burdening Plaintiffs constitutionally protected liberty interests in the exercise of their referendum and voting rights, and depriving them of their constitutionally property interests as alleged herein, and thereafter asserting under color of state law that Ordinance 878 is law, when in fact it is not, and threatening to imminently enforce Ordinance 878 against Plaintiffs.

50. Enforcement of Ordinance 878 beginning July 1, 2022, will irreparably harm Plaintiffs constitutional rights and constitutionally protected liberty and property interests guaranteed by the First and Fourteenth amendments to the United States Constitution, as alleged herein.

51. Plaintiffs are entitled to a declaration that Defendants,' while acting color of state law, have violated Plaintiffs rights under the First and Fourteenth amendments to the United States Constitution by asserting that Ordinance 878 is law and threatening to imminently enforce it against Plaintiffs when Ordinance 878 has not been submitted to voters in accordance with the Oregon Constitution or enacted and approved by a majority voting thereon.

52. Plaintiffs are entitled to a declaration enjoining Defendants from enforcing Ordinance 878 unless or until it is approved by a majority of voters at an election in accordance with the Oregon Constitution, Oregon law, the Washington County Charter, and the First and Fourteenth amendments to the United States Constitution.

53. To maintain the status quo and avoid further irreparable hard to their constitutional rights and property interests, Plaintiffs are entitled to a temporary restraining order and

preliminary injunction during the pendency of this action, in addition to permanent declaratory and injunctive relief.

54.    Plaintiffs are entitled to an award of their reasonable attorney fees and costs, including expert fees, pursuant to 43 U.S.C. §1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for order and judgment against Defendant as follows:

1. Granting permanent declaratory and injunctive relief as requested herein enjoining enforcement of Ordinance 878 unless or until it is submitted to voters for approval or rejection and approved by a majority of the votes cast thereon in accordance with the Oregon Constitution, laws of the State of Oregon, Washington County Charter, and First and Fourteenth Amendments to the United States Constitution.

2. Granting a temporary restraining order and preliminary injunction enjoining enforcement of Ordinance 878 during the pendency of this action.

3. Awarding any other equitable relief, which the court finds just and proper in the totality of the circumstances.

4. Awarding Plaintiffs reasonable attorney fees and costs, including expert fees, in accordance with 43 U.S.C. §1988.

DATED: June 27, 2022,

RIETMANN LAW P.C.

*s/ Nathan R. Rietmann*

_____

Nathan R. Rietmann, OSB #053630
1270 Chemeketa St. NE
Salem, Oregon 97301
503-551-2740
nathan@rietmannlaw.com
Attorneys for Plaintiffs